PJG SSA R&R (Rev. 01/26)                                                                 Kelvin W.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kelvin W.,[1] | ) | C/A No. 0:25-2948-RMG-PJG |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON PLAINTIFF'S APPEAL FROM THE** |
| v. | ) | **SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Commissioner of the Social Security | ) | **SOCIAL SECURITY BENEFITS** |
| Administration, | ) | |
| | ) | ☐ Affirm |
| Defendant. | ) | ☒ Reverse and Remand |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.03 (D.S.C.). The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒        Supplemental Security Income ("SSI"):  Plaintiff's age at filing:  <u>49</u>

☒        Disability Insurance Benefits ("DIB"):  Date last insured:  <u>December 31, 2023</u>

☐        Other:

Application date:  <u>October 7, 2020</u>

Plaintiff's Year of Birth:  <u>1970</u>

Plaintiff's alleged onset date:  <u>July 2, 2018</u>

**Part II—Social Security Disability Generally**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants in social security cases only by their first names and last initials.

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  March 8, 2024

In applying the requisite five-step sequential process, the ALJ found:

Step 1:          Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:          ☒  Plaintiff has the following severe impairments:

[A]nxiety, depression, right hip dysfunction, and disorder of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

☐  Plaintiff does not have a severe impairment.

Step 3:          ☒  Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:          Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he would be able to occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, or crawl.  He could never be exposed to unprotected heights, hazardous moving mechanical parts, extreme cold, or vibration. He would not be able to work at a pace as determined by the speed of machinery or equipment.  He would be able to interact occasionally with supervisors, and only superficially for up to but no more than one-hour per day in an eight-hour day with supervisors.  He would be unable to interact with the public.  He would be unable to tolerate more than ordinary and routine changes in work duties and settings.

☐  Plaintiff could return to his/her past relevant work.

Step 5:          ☐  Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒  Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, including the following representative occupations:

a marker (DOT 209.587-034, SVP 2, unskilled, light; 165,000 jobs in the national economy), a router (DOT 222.587-038, SVP 2, unskilled, light; 22,000 jobs in the national economy), and a collator operator (DOT 208.685-010, SVP 2, unskilled, light; 31,000 jobs in the national economy).

Date of Appeals Council decision:  February 19, 2025

PJG SSA R&R (Rev. 01/26)                                                                    Kelvin W.

---

**Part IV—Standard of Review**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

Plaintiff argues that the residual functional capacity ("RFC") assessment is not supported by substantial evidence because (1) "[t]he ALJ found that [Plaintiff] had limitations that were not posed to the [vocational expert ('VE')]" and (2) "[t]he ALJ did not account for [Plaintiff's] moderate limitation in concentration, persistence, or pace."

(Pl.'s Br. at 1, ECF No. 9 at 1.)

**Oral Argument:**

☐ **Held on** _____ **.**

☒ **Not necessary for recommendation.**

**Summary of Reasons**

Plaintiff challenges the ALJ's evaluation of his residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence

PJG SSA R&R (Rev. 01/26)                                                                                          Kelvin W.

in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe, 826 F.3d at 190 (quoting Mascio, 780 F.3d at 636); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d at 636-37. The ALJ must "build an accurate and logical bridge from the evidence to [her] conclusions." Monroe, 826 F.3d at 189.

Plaintiff contends the ALJ failed to adequately explain how the RFC accounts for his moderate limitations in concentration, persistence, or pace. In Mascio, the Fourth Circuit held that remand was warranted in part because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the claimant's ability to maintain concentration, persistence, or pace at Step Three of the sequential process. Mascio, 780 F.3d at 638 (agreeing with other circuits that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled

work" but acknowledging that an ALJ may be able to explain why Mascio's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity"). However, the Fourth Circuit further determined not to impose a categorical or *per se* rule that a finding of moderate limitations at Step Three would always result in a specific limitation in the residual functional capacity and held that the determinations would need to be made on a case-by-case basis. See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).

Here, in finding that Plaintiff had moderate limitations in concentration, persistence, or pace at Step Three, the ALJ observed that Plaintiff "reported difficulties with concentration, although he otherwise noted being able to pay attention, and hearing testimony described his having trouble focusing on movies." (Tr. 23.) The ALJ further found that

> [c]onsultative examination notes show no significant complaints regarding this domain, and he was noted as able to manage funds and remembering conversations, with no significant cognitive deficits observed on examination, although examiner Dr. Ritterspach did note him as likely having difficulties sustaining focus and completing tasks due to his anxiety and depression, with the claimant also observed as having little motivation but no apparent trouble with concentration or attention.

(Id.) However, the ALJ observed that there were no other observations or assessments of Plaintiff's attention or concentration in the treatment records.

With regard to this domain, in assessing Plaintiff's RFC, the ALJ again observed Plaintiff's reports of difficulty with concentration and completing tasks. (Tr. 25.) The ALJ considered the psychiatric consultative examination by Dr. Chad Ritterpach, which included a finding that "[t]esting revealed no apparent trouble with attention and concentration." (Tr. 26.) He found that subsequent records include no significant complaints of depression or anxiety and no significant issues on examination other than a neutral mood and flat effect. The ALJ concluded that "[t]hese factors, noting the claimant's subjective complaints of difficulties with focus and interacting with

others coupled with Dr. Ritterspach's observations of the claimant, support finding him capable of work with limited social interaction, particularly with the public, and involving no more than ordinary and routine changes, with the pace of work not determined by the speed of machinery or equipment." (Tr. 26-27.)

The ALJ subsequently discussed the opinion evidence. In evaluating Dr. Ritterspach's opinion, the ALJ found as follows:

> Dr. Ritterspach opined that the claimant would have the ability to interact appropriately with coworkers and supervisors but that he "may not be suited for work with the public" and that he could understand, retain, and follow semi-detailed instructions, but that he "may have problems tolerating work stress" which in turn "may cause intermittent mild difficulty sustaining focus," with his ability to complete tasks at a reasonable pace "mildly impaired" due to depressive moods. (10F). The undersigned finds this opinion somewhat vague as it generally notes that the claimant "may" have limitations and does not identify the degree to which any impairment of the claimant affects the claimant's ability to perform (in terms compliant with the policies of the Administration) any vocationally relevant activities. However, the undersigned does find this opinion otherwise well explained and supported by Dr. Ritterspach's exam, as well as somewhat consistent with the claimant's testimony and with other treatment notes showing the claimant with ongoing mood abnormalities that would reasonably cause at least some limitation on the claimant's functioning. (10F; 11F/3, 6, 13).

(Tr. 27.) The ALJ also considered the opinions of state agency psychological consultants, finding them only partially persuasive. Specifically, the ALJ observed that the consultants assessed Plaintiff with a moderate limitation in interacting with others and only mild limitations in the other domains. The consultants also found that Plaintiff could understand and remember simple and more detailed instructions; could engage in simple and more detailed instructions and tasks in a setting that precludes ongoing interaction with the general public; and could accept instructions, ask questions, get along with coworkers, and maintain socially appropriate behavior. Further, they found that Plaintiff "may have mild difficulties involved in workplace stress and adapting to customary changes in routine." (Id.) The ALJ determined that "[t]hese findings are well explained

and supported as well as generally consistent with the limited record available at the time, particularly Dr. Ritterspach's observations and opinion indicating somewhat mild limitations." (Id.)  Yet, the ALJ continued, stating "[h]owever, given the claimant's testimony, particularly regarding his ability to focus and interact with others as well as his anxiety, and noting additional records showing continued mood abnormalities despite medical compliance, the undersigned finds the claimant more limited, particularly in areas of concentration and interaction with coworkers as well as in his ability to adapt to changes." (Tr. 27-28.)  In sum, the ALJ stated that Plaintiff's RFC as to his mental limitations "is supported in part by the claimant's subjective complaints regarding his ability to focus and difficulties interacting with others, with some additional support from the observations and opinion of Dr. Ritterspach, particularly regarding his ability to interact with the public."  (Tr. 28.)

The court is constrained to find that the ALJ's analysis in this matter runs afoul of Mascio. The ALJ's RFC evaluation is internally inconsistent and it lacks sufficient explanation to enable the court to conduct meaningful review.  For example, the ALJ did acknowledge that Plaintiff had moderate limitations in concentration, persistence, or pace, in part, based on Dr. Ritterspach noting Plaintiff "as *likely* having difficulties sustaining focus and completing tasks due to his anxiety and depression."  (Tr. 23) (emphasis added).  However, in weighing this opinion evidence later, the ALJ framed Dr. Ritterspach's opinions differently and found that Dr. Ritterspach's opinion was somewhat vague as it stated that Plaintiff "may" have these difficulties, as opposed to likely, and because Dr. Ritterspach failed to identify the degree to which any impairment affected Plaintiff's

ability to perform "vocationally relevant activities."[2]  (Tr. 27.)  Additionally, as discussed above, in evaluating the opinions offered by the state agency psychological consultants, the ALJ stated that he found Plaintiff more limited than the consultants opined, "*particularly in areas of concentration* and interaction with coworkers as well as in his ability to adapt to changes."  (Tr. 27-28) (emphasis added).  However, there is no further discussion explaining which limitations, if any, accounted for Plaintiff's accepted additional limitations in concentration.

As mentioned above, the court may not analyze the facts and reweigh the evidence presented, as such action is contrary to the substantial evidence standard of review that this court is bound to apply at this stage in the proceedings.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  However, the court finds that the ALJ failed to sufficiently explain Plaintiff's residual functional capacity, and Plaintiff has directed the court to sufficient contradictory statements and findings by the ALJ that require the court to recommend this matter

---

[2] The court also observes that contrary to applicable law, the ALJ failed to specify how persuasive he found this opinion evidence, which further hinders this court's ability to conduct meaningful review.  See 20 C.F.R. §§ 404.1520c, 416.920c (instructing ALJs to consider and evaluate the persuasiveness of the opinion evidence considering supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion).  Rather, he found some portions of the opinion vague and then stated that he found "this opinion otherwise well explained and supported by Dr. Ritterspach's exam, as well as somewhat consistent with the claimant's testimony and with other treatment notes showing the claimant with ongoing mood abnormalities that would reasonably cause at least some limitation on the claimant's functioning."  (Tr. 27.)

be remanded.  Cf. Mascio, 780 F.3d at 636 (agreeing that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original).

**B.      Remaining Issue**

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Plaintiff's remaining issue concerning the vocational expert's testimony, as it may be rendered moot on remand.  See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).  Nonetheless, the court does note that although the Commissioner argues that the ALJ's failure to include the full extent of the social interaction limitation in the RFC in his hypothetical question to the vocational expert was harmless error based on a plethora of cases, these cases appear to be inconsistent with the vocational expert's own testimony in this matter stating that the Dictionary of Occupational Titles does not address the frequency of social interaction.  However, this issue can be resolved on remand, if needed.

PJG SSA R&R (Rev. 01/26)                                                          Kelvin W.

## RECOMMENDATION

**It is recommended that this matter be**

☐      **Affirmed.   Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒      **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐      **Reversed and remanded for an award of benefits.**

April 20, 2026                                      Paige J. Gossett
Columbia, South Carolina                 UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

PJG SSA R&R (Rev. 01/26)                                                     Kelvin W.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).